MAYER, Circuit Judge,
dissenting.
“[I]n some instances, a factual finding may be close to dispositive of the ultimate legal question of the proper meaning of [a claim] term in the context of [a] patent.” Teva Pharm. USA, Inc. v. Sandoz, Inc.,. — U.S.-, 135 S.Ct. 831, 841-42, — L.Ed.2d-(2015). This is such a case. After carefully evaluating the testimony of the parties’ experts, the district court made a factual finding that an artisan skilled in the art of polypeptide synthesis would have inferred from the use of an analytic technique known as size exclusion chromatography (“SEC”) in U.S. Patent No. 5,800,808 (the “'808 patent”) that the term “molecular weight” referred to peak average molecular weight. Teva Pharm. USA, Inc. v. Sandoz Inc., 810 F.Supp.2d 578, 588 (S.D.N.Y.2011) (“District Court Decision ”). The court further found that a person of ordinary skill in the art would have accepted a statement made by the patentee during prosecution of U.S. Patent No. 6,939,539 (the “'539 patent”) as “proof’ of what was meant by the term “molecular weight.” Id. at 592.* Because neither of these factual findings is clearly erroneous, we are not free to disregard or discount them in assessing whether the '808 patent withstands definiteness scrutiny. See Pullman-Standard v. Swint, 456 U.S. 273, 287, 102 S.Ct. 1781, 72 L.Ed.2d.66 (1982) (emphasizing that Federal Rule of Civil Procedure 52(a) “does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a *1346 court of appeals to accept a district court’s findings unless clearly erroneous”). I therefore respectfully dissent.
I.
In some cases, a trial court can decide an indefiniteness dispute based solely on the intrinsic evidence. When a district court’s review is confined to the intrinsic record, its conclusion on indefiniteness will be a legal determination which we can appropriately review de novo. See Teva, 135 S.Ct. at 841. In many instances, however, particularly where complex technology is at issue, a trial court will be required to look outside a patent and its prosecution history in order to fully apprehend matters such as “the background science or the meaning of a term in the relevant art during the relevant time period.” Id.; see Seymour v. Osborne, 78 U.S. 516, 546, 11 Wall. 516, 20 L.Ed. 33 (1871) (emphasizing that a patent may be “so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning”). Those laboring in different fields of scientific endeavor often speak with words drawn from specialized lexicons, and in many cases it is only by delving into the background science and thoroughly evaluating the testimony of competing experts that a trial court can make an informed determination as to whether a claim provides a skilled artisan with reasonable certainty as to the scope of an invention. See Loom Co. v. Higgins, 105 U.S. 580, 585, 15 Otto 580, 26 L.Ed. 1177 (1881) (explaining that skilled artisans “understand the language of their brother scientistfs]”).
The court here is once again led astray by its failure to afford sufficient deference to the trial court’s findings of fact. See Teva, 135 S.Ct. at 842. The district court engaged in extensive fact-finding about the background science reflected in the '808 patent. See id. at 840 (“[T]his case provides a perfect example of the factfinding that sometimes underlies claim construction: The parties here presented the District Court with competing fact-related claims by different experts, and the District Court resolved the issues of fact that divided those experts.”). After considering expert declarations and deposition testimony — and holding two hearings — the court determined that the term “molecular weight” was not indefinite because a skilled artisan would have understood its meaning. See District Court Decision, 810 F.Supp.2d at 587-95. Relying in significant measure on the testimony of Dr. Gregory Grant, Teva’s expert, the trial court made three key factual determinations: (1) a person of ordinary skill in the art of polypeptide synthesis would infer from the use of the SEC method disclosed in the specification of the '808 patent that the term “molecular weight” referred to peak average molecular weight, id. at 589-90; (2) a skilled artisan would not rely upon a statement Teva made when prosecuting the '847 patent that the expression of molecular weight in kilodalton units “im-plie[d] a weight average molecular weight,” because that statement rested on obvious scientific error, id. at 591-92; and (3) that artisan would instead rely on Teva’s affirmative statement, made while prosecuting the '539 patent, that “molecular weight” meant peak average molecular weight, id. at 592.
We must be “mindful that we are a court of review, not of first view,” Cutter v. Wilkinson, 544 U.S. 709, 718 n. 7, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005), and that our duty is to evaluate each case in light of the facts as the trial court has found them. This court’s conclusion that the '808 patent is fatally indefinite hinges on the fact that Teva made divergent statements as to the meaning of “molecular weight” when prosecuting the '847 and '539 patents. Ante at 1344. That conclu *1347 sion, however, cannot be reconciled with the district court’s express factual finding that a skilled artisan would not rely on the statement Teva made as to the meaning of “molecular weight” when prosecuting the '847 patent because it was scientifically incorrect. Peak average molecular weight, weight average molecular weight, and number average molecular weight are all expressed in kilodaltons. See District Court Decision, 810 F.Supp.2d at 592. Accordingly, Teva’s statement that the use of kilodalton units implied that “molecular weight” meant weight average molecular weight was a non sequitur and, as the district court correctly found, a skilled artisan would not have relied upon it. See id.
As this court has repeatedly made clear, obviously erroneous statements in the prosecution file carry little weight in determining claim meaning. See, e.g., Rambus Inc. v. Infineon Techs. AG, 318 F.3d 1081, 1090 (Fed.Cir.2003) (emphasizing that an “incorrect statement in the prosecution history [did] not govern the meaning of the claims”); Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc., 249 F.3d 1341, 1348 (Fed.Cir.2001) (“An error in the prosecution record must be viewed as are errors in documents in general; that is, would it have been apparent to the interested reader that an error was made, such that it would be unfair to enforce the error.”). Furthermore, a single statement by Teva during prosecution of the '847 patent — made years after the '808 patent issued — should not be deemed dispositive on the question of whether the '808 patent is sufficiently definite. See Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1580 (Fed.Cir.1996) (emphasizing that the ambiguity of the prosecution history made it “unhelpful as an interpretive resource” for determining the meaning of a claim term). While the prosecution history of one patent in a chain may be used to construe the same term in both earlier and later issued related patents with the same specification, see Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340, 1350 (Fed.Cir.2004), the court is unable to cite to a single case in which a statement made in prosecuting a later related patent was deemed sufficient, standing alone, to render an earlier issued patent indefinite. The prosecution history of the '847 patent cannot trump the disclosure in the specification of the '808 patent which, by describing the use of the SEC method, indicates to a skilled artisan that “molecular weight” means peak average molecular weight. See Vederi, LLC v. Google, Inc., 744 F.3d 1376, 1382 (Fed.Cir.2014) (emphasizing that “the specification is the single best guide to the meaning of a claim term” and that “the prosecution history often lacks the clarity of the specification” (citations and internal quotation marks omitted)).
According to the court, although Teva’s statement that the use of kilodalton units “implie[d] a weight average molecular weight” was scientifically incorrect, a skilled artisan would nonetheless have understood that the applicants defined the term “molecular weight” as weight average molecular weight to gain allowance of the claims. Ante at 1344. This argument is unconvincing. Read as a whole, Teva’s statement that the use of kilodalton units “implie[d] a weight average molecular weight” is nonsensical, and a skilled artisan would not rely upon any part of it. This is particularly true given that Teva confirmed, when subsequently prosecuting the '539 patent, that — consistent with the use of the SEC method disclosed in the specification — the term “molecular weight” meant peak average molecular weight. See Elbex Video, Ltd. v. Sensormatic Elecs. Corp., 508 F.3d 1366, 1372-73 (Fed.Cir.2007) (concluding that an earlier, incorrect statement in the prosecution history did not override a later, correct statement as to claim scope).
*1348 In assessing obviousness, what the prior art teaches is a question of fact. See Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); see also Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp., 744 F.3d 1272, 1307 (Fed.Cir.2014) (en banc) (O’Malley, J., dissenting), judgment vacated sub nom. Lighting Ballast Control LLC v. Universal Lighting Techs., Inc., — U.S. -, 135 S.Ct. 1173, 191 L.Ed.2d 130 (2015) (“Importantly, one of the key fact questions in an obviousness inquiry is what a prior art reference teaches — often, what is claimed and described in a previously issued patent. And, all findings regarding the scope and content of the prior art are subject to clear error review.” (citation omitted)). In assessing indefiniteness, likewise, a trial court’s determination, based on expert testimony, as to what a skilled artisan would glean from subsequently issued patents and their prosecution histories is a factual finding which can be set aside only for clear error. See Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 498, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (“It surely does not stretch the language of [Rule 52(a) ] to characterize an inquiry into what a person knew at a given point in time as a question of ‘fact.’ ” (footnote omitted)). We cannot substitute our assessment of the testimony for that of the trial court simply because from our appellate perch we might assess that testimony differently. If we credit— as we must because it is not clearly erroneous — the district court’s explicit finding that a skilled artisan would not rely on the facially incorrect statement made during prosecution of the '847 patent, there is no reasonable basis for concluding that the prosecution history of patents related to the '808 patent would create, in the mind of the skilled artisan, ambiguity regarding the meaning of the term “molecular weight.”
The court’s approach here contravenes binding precedent. In Enzo Biochem Inc. v. Applera Corp., we held that under Teva a trial court’s conclusion, based on expert testimony, as to whether an example in the specification disclosed, “direct detection” was a “factual finding” which was subject to clear error review. 780 F.3d 1149, 1156 (Fed.Cir.2015). Likewise, in EON Corp. IP Holdings LLC v. AT & T Mobility LLC, we held that a district court’s determination, based on the testimony from experts, that claims disclosed “complicated, customized computer software” was a “factual finding[ ].” 785 F.3d 616, 624 (Fed.Cir.2015). Here, however, the court insists that the determination, based on extensive expert testimony, that a skilled artisan would not rely on a facially incorrect statement made during prosecution of the '847 patent was “part of the legal analysis, not as the dissent claims, one of the fact findings to which we owe deference.” Ante at 1344. The court’s view that the universe of factual findings to which we owe deference includes only “[understandings that lie outside the patent documents,” ante at 1342, simply cannot be squared with E'nzo and EON.
Although the ultimate conclusion of indefiniteness. under 35 U.S.C. § 112 is a legal question, see Eidos Display, LLC v. AU Optronics Corp., 779 F.3d 1360, 1364-65 (Fed.Cir.2015), Teva mandates that the trial court’s factual findings are to be respected, barring clear error, and that the required legal analysis must be performed in view of those findings, 135 S.Ct. at 841. Here, However, the court takes the opposite tack, first embarking on an independent review of the record and then considering, as an afterthought, the important and carefully considered factual findings made by the trial court.
II.
In Nautilus, Inc. v. Biosig Instruments, Inc., the Supreme Court rejected this *1349 court’s view that a claim met definiteness requirements so long as it was “amenable to construction,” and, as construed, was not “insolubly ambiguous.” — U.S.-, 134 S.Ct. 2120, 2124,189 L.Ed.2d 37 (2014) (citations and internal quotation marks omitted). Because the district court here relied on the now discarded “insolubly ambiguous” standard when it held that the '808 patent was not invalid for indefiniteness, see District Court Decision, 810 F.Supp.2d at 582, this case should be remanded so that the court can take additional evidence as it deems appropriate and assess in the first instance whether the '808 patent meets the more stringent Nautilus definiteness standard. See 134 S.Ct. at 2124 (explaining “that a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention”).
The '808 patent will expire in September 2015. This looming expiration date does not, however, permit us to overstep our appellate role or feign first-hand experience with the testimony or the technology. We are neither equipped nor authorized to make the predicate factual determinations necessary to assess whether the '808 patent withstands definiteness scrutiny under the Nautilus standard. See Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (emphasizing that “[t]he trial judge’s major role is the determination of fact, and with experience in fulfilling that role comes expertise”).

 Teva Pharmaceuticals USA, Inc. and related parties (collectively "Teva”) own the '808 patent, which is the sole patent at issue in this appeal. The '808 patent is related to both the '539 patent and U.S. Patent No. 6,620,847 (the "'847 patent”), and the three patents share substantially identical specifications.