Opinion concurring in part, dissenting in part filed by Circuit Judge O’MALLEY.
NEWMAN, Circuit Judge.
MPHJ Technology Investments, LLC appeals the decision of the Patent Trial and Appeal Board (“Board” or “PTAB”), on Inter Partes Review, that claims 1-8 of MPHJ’s U.S. Patent No. 8,488,173 (“the T73 Patent”) are invalid on the grounds of anticipation or obviousness.[1] On appellate review, we affirm the Board’s decision.
To determine the validity of a patented invention, the meaning and scope of the claims are first determined. See Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc., 183 F.3d 1347, 1353 (Fed. Cir. 1999) (“[T]he first step in any validity analysis is to construe the claims of the invention to determine the subject matter for which patent protection is sought.”). As ratified by the Supreme Court in Cuozzo Speed Technologies, LLC v. Lee, — U.S. -, 136 S.Ct. 2131, 195 L.Ed.2d 423 (2016), when unexpired patents are reviewed by the Board, the claims are given their broadest reasonable interpretation consistent with the specification and the prosecution history, from the viewpoint of persons skilled in the field of the invention.
Background
The ’173 Patent, entitled “Distributed Computer Architecture and Process for Document Management,” describes a system and method that “extends the notion of copying from a process that involves paper going through a conventional copier device, to a process that involves paper being scanned from a device at one location and copied to a device at another location.” ’173 Patent, col. 5, 11. 51-55. The ’173 Patent calls its invention a “Virtual Copier” (“VC”) whose purpose is “to enable a typical PC user to add electronic paper processing to their existing business process.” ’173 Patent, col. 5, 11. 47-50. The patent states that its VC replicates an image “using a single GO or START button, to do a similar operation in software so that the image gets seamlessly replicated into other devices or applications or the Internet.” ’173 Patent, col. 6, 11. 38-43. Patent Figure 28 illustrates various input devices and destinations, moving by software through the virtual copier:
*1365 [[Image here]]
The challengers, Ricoh Americas Corporation, Xerox Corporation, and Lexmark International, Inc. (collectively, “Petitioner”), requested Inter Partes Review of claims 1-8, all of the T73 Patent claims, in accordance with 35 U.S.C. § 311 et seg. The PTAB instituted review, construed the claims, conducted a hearing, and held the claims unpatentable based on several prior art references. The PTAB found claims 1-8 anticipated by the Xerox Network Systems Architecture General Information Manual dated April 1985 (“XNS”) and the XNS features in Xerox 150 Graphic Input Station Operator and Reference Manual dated January 1985 (“GIS 150”). The PTAB also found claims 1-8 anticipated by U.S. Patent No. 5,513,126 to Harkins, and/or obvious in view of the combination of Harkins and U.S. Patent No. 5,818,603 to Motoyama. On this appeal MPHJ argues that the Board incorrectly broadly construed the claims and that on the correct narrow claim construction the claims are neither anticipated nor obvious.
System claim 1 and method claim 4, the independent claims, were deemed representative:
1. A system capable of transmitting at least one of an electronic image, electronic graphics and electronic document to a plurality of external destinations including one or more of external devices, local files and applications respon *1366 sively connectable to at least one communication network, comprising: at least one network addressable scanner, digital copier or other multifunction peripheral capable of rendering at least one of said electronic image, electronic graphics and electronic document in response to a selection of a Go button; at least one memory storing a plurality of interface protocols for interfacing and communicating;
at least one processor responsively connectable to said at least one memory, and implementing the plurality of interface protocols as a software application for interfacing and communicating with the plurality of external destinations including the one or more of the external devices and applications,
wherein one of said plurality of interface protocols is employed when one of said external destinations is email application software;
wherein a second of said plurality of interface protocols is employed when the one of said external destinations is a local file;
wherein a plurality of said external destinations is in communication with said at least one network addressable scanner, digital copier or other multifunction peripheral over a local area network; wherein at least one of said external destinations receives said electronic image, electronic graphics and electronic document as a result of a transmission over the at least one communication network;
a printer other than said at least one network addressable scanner, digital copier or other multifunction peripheral; wherein, in response to the selection of said Go button, an electronic document management system integrates at least one of said electronic image, electronic graphics and electronic document-using software so that said electronic image, electronic graphics and electronic document gets seamlessly replicated and transmitted to at least one of said plurality of external destinations;
wherein at least one of said electronic image, electronic graphics and electronic document is processed by said at least one network addressable scanner, digital copier or other multifunction peripheral into a file format, and wherein a plurality of said external destinations are compatible with said file format without having to modify said external destinations; and
wherein upon said replication and seamless transmission to at least one of said external destinations, said electronic image, electronic graphics and electronic document is communicable across a network to at least three other of said external destinations, and is optionally printable by said printer.
’173 Patent, col. 86, 11. 9-63. MPHJ states that the claimed “seamless” transmission requires a one-step operation without human intervention, and that this system is not shown in the prior art.
For method claim 4, MPHJ emphasizes the provision for “interfacing between at least one of said scanner, digital copier or other multifunction peripheral and email application software” in claim section (d), and argues that this means that the operation from scanner to email destination occurs in a single step. Claim 4 states:
4. A method of managing at least one of an electronic image, electronic graphics or electronic document comprising the steps of, in any order:
(a) transmitting a plurality of any of said electronic image, electronic graphics or electronic document from a source address to a plurality of external destinations including one or more of external devices, local files and applications re *1367 sponsive to said source address using at least one communication network;
(b) rendering said plurality of any of said electronic image, electronic graphics or electronic document by a network addressable scanner, digital copier or other multifunction peripheral located at said source address;
(c) communicatively linking said scanner, digital copier or other multifunction peripheral with said plurality of said external destinations via application-level interface protocols;
(d) interfacing between at least one of said scanner, digital copier or other multifunction peripheral and email application software using a first of said interface protocols;
(e) interfacing between at least one of said scanner, digital copier or other multifunction peripheral and a local file using a second of said interface protocols;
(f) communicating over a local area network between said at least one of said scanner, digital copier or other multifunction peripheral and said plurality of said external destinations;
(g) transmitting a first electronic image, electronic graphics or electronic document from said at least one of said scanner, digital copier or other multifunction peripheral to at least one of said external destinations where at least a portion of said transmitting of step (g) occurs by communicating via Internet, and using one or more of said interface protocols;
(h) integrating via at least one processor communicatively coupled with said at least one of said scanner, digital copier or other multifunction peripheral, a second electronic image, electronic graphics or electronic document so that said second electronic image, electronic graphics or electronic document gets seamlessly replicated and transmitted to at least one of said plurality of said external destinations;
(i) processing via said at least one processor said plurality of any of said electronic image, electronic graphics or electronic document into a uniform file format, wherein said plurality of said external destinations are compatible with said format without having to modify said external destinations; and
(j) seamlessly transmitting said first or second electronic image, electronic graphics or electronic document over said network from a first external destination to another of said external destinations.
’173 Patent, col. 87, 1. 10-col. 88, 1. 20. MPHJ stresses that “seamless” transmission means that “no user intervention is needed” between copying and destination. MPHJ Br. 16. MPHJ states that it is “irrelevant ... [w]hether intermediate components exist between the scanner and application software.” MPHJ Br. 17.
The PTAB construed the claims as including scanning and emailing, whether in separate steps or in a single step, with or without user intervention by human or by machine. On this construction, the PTAB invalidated the claims.

Claim Construction

MPHJ states that the terms “interfacing” and “Go button” represent a single-step operation, and that the PTAB erred in construing the claims as not limited to single-step operation.
The PTAB construed “interfacing” to mean “making a direct or indirect connection between two elements so they can work with each other or exchange information.” Bd. Op. 15. MPHJ argues that “interfacing” requires direct single-step transfer from the scanner or other peripheral device, to email or the Internet or other destination, and that the T73 Patent’s system “is direct because it excludes additional user intervention beyond initiat *1368 ing the process.” MPHJ Br. 17. MPHJ describes the Xerox prior art system as “drag and drop” in two steps. Responding to these arguments, the Board held that “nothing limits an ‘interface’ to a connection between two components.” Bd. Op. 15.
MPHJ argued similarly that the term “Go button” in the claims requires “an operation that begins a process and requires no further action from the user to complete,” Prelim. Resp. at 14, and is implemented by the claim term “application” as “a discrete software program executable on an operating system for the purpose of accomplishing a task.” Id. at 7-11. The Board ruled that the claims are not limited to a single-step transfer from scanner to email or other destination, and found the claims anticipated by the button in the XNS system that “can initiate a scan in one step and send a document via email in another.” Bd. Op. 24-25.
MPHJ states that a passage from the ’173 Patent “leaves no doubt that the scope of the ‘GO button’ is a single function that permits copying a document and integrating it into a software application (e.g., third party software) in one step.” MPHJ Br. 20. That passage states:
VC extends the notion of a copier, which simply replicates the image of an original document onto another piece of paper using a single GO or START button, to do a similar operation in software so that the image gets seamlessly replicated into other devices or applications or the Internet.
T73 Patent, col. 46,11. 36-40. MPHJ states that “seamlessly” means an automatic transfer in one step. However, the Board held that the specification and claims do not require only a single-step operation.
MPHJ argues that its claim interpretation is supported by and required by its Provisional Application No. 60/108,798 (“the ’798 Provisional”), citing two statements in the Provisional on “one step” operation using a single button:
Patent: The IMAGinE Virtual Copier Interface: A Simple Method of Presenting to a User the Complex Operation of Copying Files or Electronic Images to and from Digital Imaging Devices and/or Software Applications in One Step.
’798 Provisional at 7. The Provisional states:
The IMAGinE Virtual Copier can copy paper from a physical device directly into a third-party software application in one step. Using other applications, such as Visioneer’s Paperport or Xerox’s Pag-is, the user must first “import” or scan paper into the capture application and then drag or direct the output to another location. With the IMAGinE Virtual Copier, a single button (the Go button) directly copies paper from a scan-like device (either a copier with a scan attachment or a scanner) and places it within the third-party application.
’798 Provisional at 6. MPHJ argues that these statements “expressly limited the scope of the invention” to a one-step copying and sending process, MPHJ Br. 14, and that the claims cannot reasonably be construed as the separate steps of copying and sending. MPHJ states that such prior art was distinguished in the ’798 Provisional.
Petitioner points out that the statements in the ’798 Provisional on which MPHJ now relies were omitted from the final application. MPHJ responds that these omitted sections were not explicitly disclaimed, and therefore that they are part of the prosecution history and are properly relied on to explain and limit the claims, even if the passages do not appear in the issued patent.
*1369 We agree that a provisional application can contribute to understanding the claims. See Trs. of Columbia Univ. in New York v. Symantec Corp., 811 F.3d 1359, 1365 (Fed. Cir. 2016) (looking to the provisional application for guidance as to claim construction); Vederi, LLC v. Google, Inc., 744 F.3d 1376, 1383 (Fed. Cir. 2014) (same). In this case, it is the deletion from the ’798 Provisional application that contributes understanding of the intended scope of the final application.
We conclude that a person of skill in this field would deem the removal of these limiting clauses to be significant. The T73 Patent in its final form contains no statement or suggestion of an intent to limit the claims to the deleted one-step operation. Neither the specification nor the claims state that this limited scope is the only intended scope. Instead, the ’173 Patent describes the single-step operation as “optional.”
The T73 Patent’s abstract states, “[t]he system and/or method is software that manages paper so that it can be electronically and seamlessly copied in and out of devices and business applications with an optional single-step operation.” The ’173 Patent specification states, “I have further determined that it is desirable to enable software that manages paper so that it can be electronically and seamlessly copied in and out of devices and business applications (such as Microsoft Office, Microsoft Exchange, Lotus Notes) with an optional single-step Go operation.” ’173 Patent, col. 3,11. 35-39.
These statements that single-step operation is “optional” accord with the change from the ’798 Provisional to the final patent. A person skilled in this field would reasonably conclude that the inventor intended that single-step operation would be optional, not obligatory.
We affirm the Board’s claim construction as not limited to single-step operation of copying and transmitting.

Anticipation

The Board found the claims anticipated by the Xerox XNS system and also by the Xerox-owned Harkins patent.
Petitioner’s expert Dr. Melen explained that the Xerox GIS 150 is “an XNS system element which uses XNS protocols to communicate with other devices, and services on the internet.” Melen Decl. 28 (citing XNS at 122). The XNS reference states that “[t]he Xerox 150 scanner uses this model in providing scanned image service to XNS users,” and that the XNS system “enables a user to digitize a hardcopy image by scanning it at the scanner.” XNS at 122. “The digitized image (in RES [Raster Encoding Standard]) may be sent to a specific file in a File Service for storage, or to a Print Servicé for printing....” Id. The XNS reference states that scanned documents can be “distributed with XNS mail, edited at a workstation, or sent to any device that is directly or indirectly connected to the internet (including remote facsimile machines).” XNS at 125.
MPHJ did not dispute that “the GIS 150 does support scanning to a file, a file server, and it does support scanning to a print server.” Hr’g Tr. at 30:24-31:2. MPHJ argued that the Xerox system scans to email only in two steps. Id. at 35:22-36:11. The Board found that “XNS discloses scanning and distribution of documents [in] two steps,” Bd. Op. 25, and that these steps include direct or indirect connection. On the Board’s correct construction that claims 1 and 4 are not limited to a single-step operation, the Board’s finding of anticipation by the XNS system is supported by substantial evidence and is sustained.
*1370 The Board also found anticipation by the Harkins patent, owned by Xerox, which shows a network “having interconnected printers, scanners, facsimile devices or file servers.” Harkins, col. 5,11. 32-col. 6,11. 36. The record states that Harkins relates to the XNS System. Harkins describes “a method for a sender to automatically distribute information to a receiver on a network using devices (such as printers and facsimile machines) and communication channels (such as electronic mail) defined in a receiver profile.” Harkins, col. 4, 11. 40-46. The Board found that “Harkins discloses both scanning and email transmission,” and “discloses a plurality of interface protocols.” Bd. Op. 35. The Board credited Petitioner’s expert witness’ testimony that Harkins inherently discloses employing email protocols to transmit email. Bd. Op. 35-36. Substantial evidence supports the Board’s finding that Harkins contemplates the same sequential scanning and transmission as discussed for the XNS system, and anticipates the ’173 Patent’s claims as construed by the Board.

Other Claim Terms

MPHJ also argues that the Board erred in its constructions of the claim terms “application” and “rendering.” The Board construed “application” as it did in separate IPR proceedings on a related patent with the same specification and different claims. We discern no error in adopting this construction.
The Board did not construe “rendering.” MPHJ argues that the Board misapplied the prior art by finding that “the claims do not preclude rendering from. occurring after the ‘electronic image’ is transmitted.” Bd. Op. 34. MPHJ states that the “rendering” step must be “performed by the network addressable scanner, digital copier, or other multifunction peripheral.” MPHJ Br. 24. According to MPHJ, “a proper construction of ‘rendering’ would tie this operation to the scanner/copier,” MPHJ Br. 37, for “[i]t is technically impossible for a scanner to transmit a document before it has a chance to render that document.” MPHJ Br. 23. The Petitioner does not disagree. However, the Petitioner states that Harkins shows “rendering” performed by the fax machine when the electronic document is transmitted; thus Petitioner argues that MPHJ’s proposed definition of “rendering” does not avoid anticipation.
The Board found that “Harkins teaches that the recipient of a document may set up a ‘profile describing the preferred form (facsimile, electronic mail, voice mail, hard copy, color or black, file server, etc.) and service (the specific printer, facsimile machine etc.) documents should take to be rendered.’ ” Bd. Op. 34. The Board held that no claim limits “rendering” to single-step operation. Substantial evidence supports the finding that Harkins shows rendering of electronic documents.
We have considered MPHJ’s additional arguments, and deem them unpersuasive of reversible error in the Board’s conclusion of anticipation.

Obviousness

As an alternative ground, the PTAB invalidated claims 1-8 on the ground of obviousness. The PTAB combined the Motoyama reference with Harkins, citing Motoyama for its teaching of the connection of devices such as copiers, printers, and fax machines, to an office network. Bd. Op. 37. Motoyama states that different machines communicate with each other according to different protocols, and describes a “control/diagnostic system” that includes a database of communication protocols for various network machines. Motoyama, col. 1, 11. 41-43; col. 1, 11. 47-58.
Although MPHJ argued at trial that a person of ordinary skill would not have combined Harkins and Motoyama, this ar *1371 gument is not pressed on appeal. On our sustaining the Board’s finding of anticipation, we do not decide the Board’s alternative ruling of obviousness.
CONCLUSION
The ruling of invalidity of claims 1-8 of the ’173 Patent is
AFFIRMED.

. Ricoh Ams. Corp. v. MPHJ Tech. Invs., No. IPR2014-00538, 2015 WL 4911675, (P.T.A.B. Aug. 12, 2015) ("Bd. Op.”).