# United States Court of Appeals for the Federal Circuit

---

**DDR HOLDINGS, LLC,**
*Plaintiff-Appellant*

**v.**

**PRICELINE.COM LLC, BOOKING.COM B.V.,**
*Defendants-Appellees*

---

2023-1176, 2023-1177

---

Appeals from the United States District Court for the District of Delaware in Nos. 1:17-cv-00498-CFC-JLH, 1:17-cv-00499-CFC, Chief Judge Colm F. Connolly.

---

Decided: December 9, 2024

---

IAN B. CROSBY, Susman Godfrey LLP, Seattle, WA, argued for plaintiff-appellant. Also represented by SHAWN DANIEL BLACKBURN, MENG XI, Houston, TX; LOUIS JAMES HOFFMAN, Hoffman Patent Firm, Scottsdale, AZ.

LAUREN J. DREYER, Baker Botts LLP, Washington, DC, argued for defendants-appellees. Also represented by MARGARET MCINERNEY WELSH, New York, NY; JEREMY TAYLOR, San Francisco, CA; FRANCIS DIGIOVANNI, Faegre Drinker Biddle & Reath LLP, Wilmington, DE.

---

Before CHEN, MAYER, and CUNNINGHAM, *Circuit Judges*.

CHEN, *Circuit Judge*.

DDR Holdings, LLC (DDR) appeals a final judgment of the United States District Court for the District of Delaware of non-infringement of U.S. Patent No. 7,818,399 ('399 patent) for Priceline.com LLC and Booking.com B.V. (collectively, Priceline.com or Appellees). DDR alleges that the district court erred in construing the claim term "merchants" to be limited to purveyors of goods alone, rather than purveyors of goods and services. DDR also alleges that the district court erred in construing the related claim term "commerce object" to include goods, but not services. For the reasons below, we *affirm*.

BACKGROUND

A.  The '399 Patent

As this court has previously summarized, the '399 patent relates to generating a composite web page that combines certain visual elements of a "host" website with content from a third-party "merchant." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1248 (Fed. Cir. 2014). The e-commerce system disclosed in the '399 patent involves "three main parties" aside from the end consumer: merchants, hosts, and outsource providers. '399 patent col. 22 ll. 9–12. "Merchants are the producers, distributors, or resellers of the goods to be sold through the outsource provider." *Id.* col. 22 ll. 17–19. "A Host is the operator of a website that engages in Internet commerce by incorporating one or more link[s] to the e-commerce outsource provider into its web content." *Id.* col. 22 ll. 45–47. Finally, the outsource provider is an intermediary between the host and merchant that "[c]reate[s], maintain[s], and update[s] the 'look & feel capture' process through which consumers are able to shop in a Merchant-controlled storefront within the design and navigational context of the Host website, preserving the ownership of

the visit experience by the Host." *Id.* col. 22 l. 60 – col. 23 l. 7. Through the outsource provider, the disclosed system enables host websites to retain visitor traffic and control the customer experience while displaying information on products from third-party merchants. *See id.* col. 2 ll. 57–67.

Claim 1 is representative and recites:

1. A method of an outsource provider serving web pages offering commercial opportunities, the method comprising:

(a) automatically at a server of the outsource provider, in response to activation, by a web browser of a computer user, of a link displayed by one of a plurality of first web pages, recognizing as the source page the one of the first web pages on which the link has been activated;

> (i) wherein each of the first web pages belongs to one of a plurality of web page owners;

> (ii) wherein each of the first web pages displays at least one active link associated with a *commerce object* associated with a buying opportunity of a selected one of a plurality of *merchants*; and

> (iii) wherein the selected merchant, the outsource provider, and the owner of the first web page are each third parties with respect to one other;

(b) automatically retrieving from a storage coupled to the server pre-stored data associated with the source page; and then

(c) automatically with the server computer-generating and transmitting to the web browser a second web page that includes:

> (i) information associated with the commerce object associated with the link that has been activated, and
>
> (ii) a plurality of visually perceptible elements derived from the retrieved pre-stored data and visually corresponding to the source page.

*Id.* at claim 1 (emphases added).

### B. Procedural History

DDR sued Priceline.com in 2017 for infringement of four patents, including the '399 patent. Priceline.com petitioned the Patent Trial and Appeal Board (Board) for *inter partes* review (IPR) of all four asserted patents. The parties stipulated to stay the district court proceedings pending resolution of the IPRs. The Board found all challenged claims of three of the asserted patents to be unpatentable. However, the Board found that the challenged claims of the '399 patent were not shown to be unpatentable. Although its patentability analysis did not turn on the meaning of "merchants," the Board applied the "broadest reasonable interpretation" standard to construe "merchants" as "producers, distributors, or resellers of the *goods or services* to be sold." J.A. 707–08, 736; J.A. 748–49 (emphasis added).

Following the IPR decisions, the district court lifted the stay and proceeded with claim construction for the '399 patent. As relevant to this appeal, the parties disputed the constructions of the claim terms "merchants" and "commerce object." DDR proposed that "merchants" be construed as "producers, distributors, or resellers of the *goods or services* to be sold." J.A. 1288 (emphasis added). Priceline.com proposed that "merchants" be construed as "producers, distributors, or resellers of the *goods* to be sold through the outsource provider." *Id.* (emphasis added). The district court construed "merchants" as "producers,

distributors, or resellers of the *goods* to be sold." J.A. 9 (emphasis added).

Additionally, DDR proposed that "commerce object" be construed as "a product (goods or services), a product category, a catalog, or an indication that [a] product (goods or services), product category, or catalog should be chosen dynamically." J.A. 1290. Priceline.com proposed that "commerce object" be construed as "a product, a product category, a catalog, or an indication that a product, product category, or catalog should be chosen dynamically." *Id.* Noting that the word "products" is not a claim term, the district court found "as a matter of fact that the ['399 patent's] written description treats 'goods' and 'product' interchangeably, and it distinguishe[s] them [from] 'services.'" J.A. 1357 l. 21 – 1358 l. 11. The district court then adopted Priceline.com's proposed construction, effectively construing "commerce object" to exclude "services." J.A. 9.

Following the court's claim construction order, the parties stipulated to non-infringement, "agree[ing] that the Accused Instrumentalities do not infringe the asserted claims of the '399 Patent under the Court's claim constructions and that the Court's construction of either the term 'merchants' or the term 'commerce object' is case-dispositive in Defendants' favor on the issue of infringement." J.A. 5. The court entered final judgment, from which DDR appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I.

"We review claim construction based on intrinsic evidence de novo and review any findings of fact regarding extrinsic evidence for clear error." *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1378 (Fed. Cir. 2021). "Claim terms are generally given their plain and ordinary

meanings to one of skill in the art when read in the context of the specification and prosecution history." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)). "There are only two exceptions to this general rule:  1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Id.* (quoting *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).

## II.

We turn first to the construction of "merchants."  The parties' dispute over this term hinges on the variance in disclosures made between the '399 patent's written description and the provisional application[1] to which the patent claims priority.

The provisional application, which appears to be a marketing document for a company called Nexchange, describes "an alternative approach" to e-commerce that "lets merchants take advantage of the Internet marketing competency of third-party website operators."  J.A. 868. The provisional application includes a section entitled "Products and Services," under which it states: "There are three main parties in every Nexchange relationship, excluding the end consumer.  These parties include Nexchange Merchants, Nexchange Hosts, and Nexchange." *Id.* at 870.  The provisional application continues, "Nexchange Merchants are the producers of the *goods* to be sold through Nexchange." *Id.* (emphasis added).  Under a separate section entitled "Value Propositions," the provisional application provides: "Merchants, defined as producers, manufacturers, and select distributors of

---

[1]    U.S. Provisional Patent App. No. 60/100,697.

*products or services*, are strongly attracted to the sales potential of the Internet." *Id.* at 875–76 (emphasis added). The provisional application thus discusses merchants as producers of "goods" in one instance, and "products or services" in another.

The specification of the '399 patent provides certain parallel disclosures. The '399 patent discloses: "There are three main parties in the outsourced e-commerce relationship, excluding the end consumer. These parties include Merchants, Hosts, and the e-commerce outsource provider." '399 patent col. 22 ll. 9–12. The patent, under the heading "Merchants," further provides: "Merchants are the producers, distributors, or resellers of the *goods* to be sold through the outsource provider." *Id.* col. 22 ll. 15–18 (emphasis added). Notably missing from the patent's specification, however, is any mention of *services* in relation to merchants. There is no disclosure in the specification analogous to the provisional application's disclosure that "[m]erchants [are] defined as producers, manufacturers, and select distributors of *products or services*."

During the claim construction hearing, the district court began by looking at the claim language and noting there is "no reference to services." J.A. 1418 ll. 24–25. The district court next looked at the written description and determined it contains "no references to a merchant providing a service"; "[i]nstead, merchants are always discussed with respect to products or goods." *Id.* at 1418 l. 25 – 1419 l. 3. In discussing the sentence in the provisional application that "merchants" are "defined as producers, manufacturers, and select distributors of products or services," J.A. 876, the district court noted that the "deletion from the written description [of the '399 patent] of a term that was in the provisional application . . . . contributes to an understanding of what the scope and meaning of the final application, the final written description reflects." J.A. 1420 l. 17 – 1421 l. 15. The district court subsequently construed "merchants" as

"producers, distributors, or resellers of the goods to be sold." J.A. 9.

DDR argues on appeal that it acted as its own lexicographer by providing, in the provisional application, an "explicit definition" of "merchants" to include "both goods and services," as well as making this definition an "explicit part" of the '399 patent specification by incorporating the provisional application by reference. Appellant's Br. 11–12 (internal quotation marks omitted). According to DDR, the '399 patent specification never disclaimed or redefined the provisional application's definition because the relevant sentence in the specification—"Merchants are the producers, distributors, or resellers of the goods to be sold through the outsource provider"—is not definitional, as it does not use the phrase "defined as" or set off the term "merchants" by quotation marks. *Id.* at 13–16. DDR does not offer an explanation as to why, compared to the provisional application, the '399 patent omitted the term "services" from its specification.

Like the district court, we find DDR's arguments unpersuasive. When construing claims, this court looks to how a skilled artisan would read the claim term "in the context of the entire patent," including the specification and prosecution history. *Phillips*, 415 F.3d at 1313. Here, the deletion made by the patent drafter between the provisional application and the patent specification is highly significant. Although DDR's provisional application discussed merchants as both purveyors of "goods" and purveyors of "products or services," DDR elected in its patent specification to delete the reference to "products or services" and instead discuss merchants as purveyors of "goods" alone. A skilled artisan would understand this progression between the provisional application and the patent specification to indicate an evolution of the applicant's intended meaning of the claim term, which is further reinforced by the specification's clear statement that "[m]erchants are the producers, distributors, or

resellers of the *goods* to be sold through the outsource provider," '399 patent col. 22 ll. 17–18. In light of the patentee's deletion of any reference to merchants providing "services" in the final specification, we agree with the district court's construction that "merchants" are purveyors of goods, not services.

This court performed a similar analysis in *MPHJ Technology Invs., LLC v. Ricoh Americas Corp.*, 847 F.3d 1363 (Fed. Cir. 2017). In *MPHJ*, an appeal from an IPR proceeding before the Board, the patent owner argued that the claim term "seamless" required "a one-step operation without human intervention." *Id.* at 1366. For support, the patent owner relied on the provisional application (to which the patent-at-issue claimed priority), which included two statements on "'one step' operation using a single button." *Id.* at 1368. The petitioner countered that those statements in the provisional application were omitted from the final application, which instead described single-step operation as "optional." *Id.* at 1368–69. In response, the patent owner argued that "these omitted sections were not explicitly disclaimed, and therefore . . . they are part of the prosecution history and are properly relied on to explain and limit the claims, even if the passages do not appear in the issued patent." *Id.* at 1368.

The *MPHJ* court determined that, in light of the "deletion from the . . . [p]rovisional application," a skilled artisan "would deem the removal of these limiting clauses to be significant." *Id.* at 1369. Considering both "the change from the . . . [p]rovisional to the final patent," and the statements in the final patent that single-step operation was "optional," the court concluded that a "person skilled in this field would reasonably conclude that the inventor intended that single-step operation would be optional, not obligatory." *Id.*

Here, too, we determine that a skilled artisan would deem significant the '399 patent specification's deletion of

the provisional application's reference to merchants as purveyors of services. Reading the claim term "in the context of the entire patent," *Phillips*, 415 F.3d at 1313, including the deletion, a skilled artisan would have understood "merchants" to exclude services. Accordingly, we affirm the district court's construction of "merchants" as "producers, distributors, or resellers of the goods to be sold."

Our conclusion is not undermined by the fact that the '399 patent specification incorporates by reference the provisional application. *See* '399 patent col. 1 ll. 13–15. DDR argues that no "deletion" took place because the '399 patent's incorporation of the provisional application results in "one document," in which neither the written description on the face of the patent nor the incorporated provisional application "supersedes or amends its counterpart." Appellant's Br. 9, 16–17.

This court has explained, however, that when a host patent incorporates another patent by reference, "the disclosure of the host patent provides context to determine what impact, if any, a patent incorporated by reference will have on construction of the host patent claims." *Finjan LLC v. ESET, LLC*, 51 F.4th 1377, 1382 (Fed. Cir. 2022). In *Finjan*, this court explained that "[t]he use of a restrictive term in an earlier application does not reinstate that term in a later patent that purposely deletes the term, even if the earlier patent is incorporated by reference." *Id.* at 1383 (citing *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1553 (Fed. Cir. 1996)). The same principle holds here. A skilled artisan reading the incorporated provisional application in the context of the '399 patent specification would consider that "merchants" providing "services" was included in the provisional application, yet deleted by the patent drafter from the final specification. That deletion, which "was conspicuous and unambiguous," *Modine*, 75 F.3d at 1552, would in turn indicate to a skilled

artisan that the patentee intended "merchants" to exclude services.

We next address DDR's argument, made in its reply brief, that Priceline.com is "collaterally estopped from even suggesting that the nonprovisional contains a definition" because "Appellees already litigated—and lost—that precise issue before the [Board]." Appellant's Reply Br. 24. DDR refers to the Board's determination that the specification's statement—that "[m]erchants are the producers, distributors, or resellers of the goods to be sold through the outsource provider"—is not definitional "because the statement does not sufficiently evidence an intention by the patent [a]pplicant to depart from the ordinary meaning of the term." J.A. 748. After making that determination, the Board adopted the patent owner's (i.e., DDR's) definition of merchants as "producers, distributors, or resellers of the goods or services to be sold," reasoning that such definition was "broader and not unreasonable." J.A. 749 (citation omitted).

As an initial matter, DDR forfeited this argument both on appeal and in the underlying district court proceedings. DDR did not raise its collateral estoppel argument in its opening brief, and "[o]ur law is well established that arguments not raised in the opening brief are [forfeited]." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).[2]   And in the underlying claim construction proceeding, the district court concluded that DDR had forfeited its collateral estoppel arguments by

---

[2]    The *SmithKline* court used the term "waiver," but for consistency we use "forfeiture" here. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020) ("By and large, in reviewing this court's precedent, it is evident that the court mainly uses the term 'waiver' when applying the doctrine of 'forfeiture.'").

failing to mention estoppel or preclusion in its briefs. J.A. 1392 ll. 13–16, 1394 ll. 12–18.

Even ignoring DDR's forfeiture, we note that neither this court nor the district court—both of which employ a *Phillips* standard for claim construction—is bound by the Board's constructions under the broadest reasonable interpretation standard. [3] *Compare Phillips*, 415 F.3d at 1312–13, *with Cuozzo Speed Techs. v. Com. for Intell. Prop.*, 579 U.S. 261, 276 (2016). This court has held that "the issue preclusion doctrine can apply in this court to the Patent Trial and Appeal Board's decision in an IPR once it becomes final." *Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1250–51 (Fed. Cir. 2019). But that principle is inapplicable here, where we employ a different claim construction standard than that used by the Board. *See ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1361 (Fed. Cir. 2024) ("The application of collateral estoppel is 'subject to certain well-known exceptions' . . . [including] where 'the second action involves application of a different legal standard, even though the factual setting of both suits may be the same.'" (quoting *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148, 154 (2015))). "Because the Board applies the broadest reasonable construction of the claims while the district courts apply a different standard of claim construction as explored in *Phillips*," a party is not collaterally estopped in district court proceedings by the

---

[3] In late 2018, the Board announced a final rule adopting the *Phillips* claim construction standard in IPR petitions filed on or after November 13, 2018. *See, e.g.*, *Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1340 n.2 (Fed. Cir. 2020). Because the IPR at issue here was filed before that date, the Board's claim construction inquiry was governed by the broadest reasonable interpretation standard.

Board's constructions during IPR. *SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1376 (Fed. Cir. 2016).

In the related IPR proceedings, the Board determined, under the broadest reasonable interpretation standard, that the '399 patent specification's statement that "[m]erchants are the producers, distributors, or resellers of the goods to be sold through the outsource provider" is not definitional. J.A. 748. However, the Board had leeway before determining that a narrowing statement in the specification provides a definition for a claim term. That is because the Board's standard asks for the *broadest* construction that is still reasonable, which weighs against adopting any narrower statement as definitional. A district court, on the other hand, could conclude under *Phillips* that a narrower statement, read in the context of the specification and prosecution history, would best be understood by a skilled artisan as definitional. The Board itself recognized the distinctive nature of the broadest reasonable interpretation standard when it observed that its chosen interpretation for "merchants" "is broader and not unreasonable." J.A. 749.[4]

Accordingly, although the Board found the statement at issue in the specification to not be definitional, we conclude under *Phillips* that it is, in light of the intrinsic evidence. We thus affirm the district court's construction of "merchants" as purveyors of goods, not services.

## III.

Finally, we turn to the construction of "commerce object." The district court "effectively construed" the claim term "commerce object" based on the same reasoning used to construe "merchants." J.A. 1423 l. 25 – 1424 l. 18. On

---

[4]    We note that the Board's analysis did not consider the difference in disclosures between the provisional application and the final specification of the '399 patent.

appeal, the parties agree that the construction of "commerce object" should adhere to the construction of "merchants." Appellant's Br. 25; Appellees' Br. 32–34. Accordingly, we affirm the district court's construction of "commerce object" as "a product, a product category, a catalog, or an indication that a product, product category, or catalog should be chosen dynamically."

## CONCLUSION

We have considered DDR's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.

## **AFFIRMED**